**John E. PATTERSON, et al., Plaintiffs,**

v.

**NEWSPAPER AND MAIL DELIVERERS' UNION OF NEW YORK AND VICINITY, et al., Defendants.**

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**NEWSPAPER AND MAIL DELIVERERS' UNION OF NEW YORK AND VICINITY, et al., Defendants.**

**In the Matter of George S. COURTIS, Jr., Pursuant to the Terms of the Settlement Agreement.**

**Nos. 73 Civ. 3058 (WCC), 73 Civ. 4278 (WCC). Claim No. 187.**

United States District Court, S.D. New York.

Nov. 27, 1991.

Grotta, Glassman & Hoffman, P.A., Roseland, N.J. (Jedd Mendelson, of counsel), for The New York Times.

O'Connor & Mangan, P.C., Long Island City, N.Y. (J. Kenneth O'Connor, of counsel), for NMDU.

William S. Ellis, Interim Adm'r, New York City.

OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

A class of private plaintiffs and the Equal Employment Opportunity Commis-

sion ("EEOC") brought two civil rights actions in 1973 against the Newspaper and Mail Deliverers' Union of New York and Vicinity ("NMDU" or "Union") and more than fifty news publishers and distributors within the Union's jurisdiction. Both suits charged that the Union, with the acquiescence of the publishers and distributors, had historically discriminated against minorities, and that the structure of the collective bargaining agreement, combined with nepotism and cronyism, had perpetuated the effects of past discrimination in violation of Title VII of the Civil Rights Act of 1964. Each lawsuit sought an affirmative action program designed to achieve for minorities the status they would have had in the newspaper delivery industry but for the alleged discriminatory practices.

On September 19, 1974, then-District Judge Lawrence W. Pierce issued an opinion and order approving a settlement between the parties and incorporating the Settlement Agreement in a Consent Decree, familiarity with which is presumed. *See Patterson v. Newspaper and Mail Deliverers' Union,* 384 F.Supp. 585 (S.D.N.Y.1974) *aff'd,* 514 F.2d 767 (2d Cir. 1975), *cert. denied,* 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976). The Settlement Agreement implements an affirmative action program which modifies the hiring procedures for newspaper deliverers under the industry-wide collective bargaining agreement. Under the Consent Decree, each employer maintains a work force of regular situation holders for its minimum delivery needs. To accommodate fluctuations in circulation, the publishers are permitted to supplement their work force with daily shapers.

The daily shapers are divided into three groups with descending hiring priorities. Those shapers on the Group I list have first priority, after the regular situation holders, in order of their shop seniority. The next priority belongs to Group II shapers. Group II consists of all persons holding regular situations or Group I positions with other employers in the industry. Last in order of priority are the Group III shapers.

The Settlement Agreement also established an Administrator, appointed by the Court, to implement the provisions of the Consent Decree and to supervise its performance. The Settlement Agreement authorizes the Administrator to hear claims concerning violations of the Consent Decree. Appeals from his decisions are heard in this Court.

Pursuant to the Settlement Agreement, plaintiff seeks review of a determination by Administrator William S. Ellis, Esq. (the "Administrator"), denominated "Claim 187." The Court has reviewed the exhibits and testimony relied upon by the Administrator, as well as the arguments submitted to the Court by the parties. For the reasons set forth below, the Administrator's decision is affirmed.

## BACKGROUND

The claim before the Court arises from the application of George S. Courtis, Jr. ("Courtis"), a Group I employee at S. Rachles News Company, Inc. ("Rachles"), filed initially in 1985, requesting that he be transferred on the ground of medical hardship, namely an asthmatic condition, to the New York Times (the "Times"). That application for transfer was denied by the Administrator in a Determination dated January 20, 1986. Thereafter, the matter was reopened for the purpose of presenting additional medical evidence as to Courtis's physical condition. Following that second hearing and based upon the additional evidence, the Administrator certified Courtis for transfer, stating:

I approve the transfer of GEORGE COURTIS, JR. to the NEW YORK TIMES, subject to the approval of the TIMES, or, in the alternative to the DAILY NEWS.

Administrator's Determination dated May 29, 1987. Courtis appealed from that portion of the decision which conditioned his transfer on the approval of the Times, or in the alternative, the Daily News, apparently because he wished the Administrator to order the Times to accept him.

During the pendency of that appeal, the Times declined to accept Courtis. In Octo-

ber 1987, Courtis was made a regular situation holder at Rachles. In January 1988, Rachles transferred its magazine operation to Hudson County News and on January 11, 1988, Courtis was informed that he was laid off for business reasons effective January 25, 1988. In March 1988, Courtis commenced a claim in which he expressed a desire to transfer to the Times on the grounds that he was a laid-off employee as that term is used in ¶ 18 of the Settlement Agreement. The Court remanded the matter to the Administrator and dismissed Courtis's appeal in Claim 187 without prejudice should the new petition to the Administrator be denied. Soon thereafter, the Daily News agreed to accept Courtis on its Group I list, and a seniority list including his name was issued. Mr. Courtis has not worked at the Daily News since he was placed on the News Group I list.

In a decision dated May 3, 1991, the Administrator found that Mr. Courtis had been laid off as a regular situation holder by his employer and that there was insufficient work available for Courtis at that employer.[1] Although Courtis urged that he be transferred to the Times, the Administrator, after considering other factors including the refusal of the Times to accept Mr. Courtis and the assent of the Daily News to the addition of Mr. Courtis to its Group I list, approved the transfer of Mr. Courtis to the Daily News pursuant to Paragraph 18(b) of the Settlement Agreement.

The NMDU, on behalf of Courtis, appeals from the May 3, 1991 Determination, arguing that the Administrator improperly transferred Mr. Courtis to the Daily News in contravention of Mr. Courtis's wish to be transferred to the Times. The Times opposes the appeal.

### DISCUSSION

The Settlement Agreement provides the Administrator with broad authority to take all actions he deems necessary to imple-

ment the provisions and to ensure the performance of the Order. It further provides that the Administrator shall hear and determine a wide variety of claims arising under the Agreement, which may then be brought before the Court for review. Agreement ¶ 4.

In *Foreman v. Wood, Wire & Metal Lathers Int'l Union, Local No. 46*, 557 F.2d 988, 992 (2d Cir.1977), the Second Circuit noted that the scope of review of an independent administrator appointed to ensure compliance with a settlement decree was similar to that applied to an arbitrator's decision. More recently in *United States v. Int'l Brotherhood of Teamsters*, 905 F.2d 610, 616 (2d Cir.1990), the Court of Appeals reiterated that an administrator's decision is "entitled to great deference." Thus, it is clear that an administrator's decision cannot be rejected merely because a court may be inclined to reach a different result.

Courtis contends that the Administrator's decision to transfer him to the Daily News, after Courtis had expressed a desire to be transferred only to the Times, was in violation of Paragraph 18(b) of the Settlement Agreement. Paragraph 18(b) provides in pertinent part:

The Administrator shall also be authorized and empowered to reassign any regular situation holders who may be laid off for economic or business reasons to the top of the Group I list at the defendant employer by which they were so laid off. If the Administrator determines that there is insufficient work available for such persons at said employer, such persons, except as otherwise provided herein, *may thereafter be added to the bottom of a Group I list at any other defendant employer in the industry they may choose....* (emphasis added).

Courtis reads this language, in particular the words "they may choose," as conferring upon applicants the unfettered and

---

1. It had been alleged that Courtis was fired from Rachles for various reasons; however, the Administrator, following several years of inaction on the part of the Rachles and the NMDU, concluded that the issue of discharge was moot and that Courtis should be treated as a laid-off regular situation holder.

unilateral ability to determine the entity to which they will transfer once the Administrator has certified them for transfer. However, this interpretation is refuted by the plain language of ¶ 18(b) as well as the spirit of the Consent Decree.

The proper focus is upon the words "may thereafter be added," which indicate that it is within the discretion of the Administrator to determine, from among the choices submitted by the laid-off employee, to the bottom of which Group I list the employee's name should be added. If the Settlement Agreement had contemplated that the Administrator and the targeted employer were required to accept as controlling the laid-off employee's desires, the provision would have read "such persons ... [*shall*] thereafter be added to the bottom of a Group I list at any other defendant employer in the industry they may choose...." Use of the term "may" at that point, rather than "shall," indicates that the Administrator is given some discretion in determining to which employer the laid-off employee will ultimately be transferred, and is not required to accept as controlling the laid-off employee's desires and force transfer applicants upon an employer which is seeking to select its own work force.

The purpose of Paragraph 18 was simply to prevent voluntary transfers by which undeserving persons with relatively little service in the industry could readily move to the most desirable positions. *Patterson v. Newspaper & Mail Deliverers' Union*, 514 F.2d 767, 770 (2d Cir.1975), *cert. denied*, 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976). By empowering the Administrator to certify such persons for transfer, the Consent Decree insures that the NMDU may not collude with employers to transfer and elevate such persons. Nothing in the Consent Decree or the litigation that led to it evidences an intention to require the Administrator to impose transfers, based upon the request of a laid-off employee, without considering the interests of the targeted employer.

In sum, the Court concludes that the Administrator properly considered more than simply the wishes of the laid-off employee in determining to which shop Mr. Courtis should be transferred. Neither Paragraph 18 nor the prior decisions of the Administrator mandates that the employee be given unilateral and unfettered control regarding the entity to which he may transfer. *See, e.g.*, Determination of Claim 266, dated January 3, 1991 (Administrator's proposed plan for transfer of former Post employees to be considered by Union and the proposed transferee companies); Determination of Claim 246, dated January 25, 1991 (denying request of two laid-off employees to transfer to the Daily News in view of the strike at the News and its present difficulties); Determination of Claim 236, dated April 24, 1990 (transfer for medical hardship to a New Jersey wholesaler certified subject to approval by the NMDU and the proposed wholesaler).

## CONCLUSION

For the above-stated reasons, the Administrator's Determination dated May 3, 1991 is affirmed in its entirety.

SO ORDERED.